1  Richard Lyon (Cal. Bar No. 229288)
2  rick@dovel.com
   DOVEL & LUNER, LLP
3  201 Santa Monica Blvd., Suite 600
   Santa Monica, California 90401
4  Telephone: (310) 656-7066
5  Facsimile: (310) 656-7069

6
   Kevin Kneupper, Esq. (CA SBN 325413)
7  kevin@kneuppercovey.com
   A. Cyclone Covey, Esq. (CA SBN 335957)
8  cyclone@kneuppercovey.com
   KNEUPPER & COVEY, PC
9  17011 Beach Blvd., Ste. 900
10 Huntington Beach, CA 92647-5998
   Telephone: (512) 420-8407
11
12
   *Attorneys for Plaintiffs*
13

14
                    **UNITED STATES DISTRICT COURT**
15                  **CENTRAL DISTRICT OF CALIFORNIA**
16

17 MALCOLM GRIFFIN and KARIEM         Case No. 2:24-cv-03681
18 IBRAHIM, individually and on behalf of
   all others similarly situated,        **CLASS ACTION COMPLAINT**
19
20        *Plaintiffs*,                   **DEMAND FOR JURY TRIAL**
21
22 v.
23 TEAM GROUP, INC.,
24        *Defendant.*
25

26
27
28

# Table of Contents

I.     Introduction. ................................................................................................1

II.    Parties. ........................................................................................................1

III.   Jurisdiction and Venue. ..............................................................................1

IV.    Facts. ..........................................................................................................2

      A.    Team Group's ads and online listings promise that its memory will run at the advertised speed out of the box, and that it will do so reliably.  These representations are not qualified. ..............................2

      B.    Trying to get the advertised speed requires altering the PC firmware, and there is a substantial risk that the memory will not achieve the advertised speed or run stably. ...............................8

            1.    Attempting to obtain the advertised speeds requires altering PC firmware. ..............................................................9

            2.    There is a substantial risk that the memory will not run at the indicated speed or will not run stably at this speed. ..............10

V.     Defendant's ads are misleading to reasonable consumers. .........................11

VI.    Plaintiffs were misled and harmed by Defendant's advertisements. ...........13

VII.   Class action allegations. ............................................................................14

VIII.  Claims. .......................................................................................................17

      First Cause of Action: Violations of State Consumer Protection Acts ......17

      Second Cause of Action: Violation of California's Unfair Competition Law ..........20

      Third Cause of Action: Violation of California's False Advertising Law (FAL) ..............................................................................22

      Fourth Cause of Action: Violation of California's Consumer Legal Remedies Act. .............................................................................23

      Fifth Cause of Action: Violation of New York Gen. Bus. Law § 349 (by Plaintiff Ibrahim and the New York Subclass) ..........................26

      Sixth Cause of Action: Violation of New York Gen. Bus. Law § 350 .......27

Seventh Cause of Action: Breach of Express Warranty ..............................................28

Eighth Cause of Action: Negligent Misrepresentation ..............................................29

IX.    Relief. ..............................................................................................................30

X.    Demand for Jury Trial. ....................................................................................30

## I.      Introduction.

1.      Defendant Team Group, Inc. ("Team Group" or "Defendant") sells premium, high-speed computer memory.  Its typical customers are computer gamers interested in improving the performance of their games.

2.      The most important measure of memory performance is the speed at which it transfers data (measured in megahertz, or MHz).  Defendant advertises that the memory runs at specific, high MHz speeds (e.g., "3600 MHz").

3.      In reality, trying to get the advertised speed requires altering the PC firmware to attempt to "overclock" the memory and make it run at higher than standard speeds. And when overclocking, there is a substantial risk that the memory will not achieve the advertised speed or run stably.

4.      Defendant has made tens of millions of dollars (or more) by deceptively advertising its high-speed memory products.

5.      Plaintiffs bring this case individually and for all consumers who purchased Team Group's high-speed memory products in the United States.

## II.     Parties

6.      Plaintiff Malcolm Griffin is domiciled in Sacramento, California.

7.      Plaintiff Kariem Ibrahim is domiciled in New York, New York.

8.      The proposed classes include citizens of most (or potentially all) states.

9.      Defendant Team Group, Inc. is a Taiwanese corporation with its principal place of business at 3F., NO.166, Jian Yi Rd., Zhonghe Dist., New Taipei City 23511, Taiwan, R.O.C.

## III.    Jurisdiction and Venue.

10.     This Court has personal jurisdiction over Defendant because this cause of action arises from, and has a substantial connection to, Defendant's contacts with California. In particular, Defendant purposefully marketed and sold Team Group memory products in California, including to Plaintiff Griffin.

11.     Because Team Group, Inc. is not a U.S. resident, venue is proper in any District. *See* 28 U.S.C. § 1391(c)(3).

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

**IV.    Facts.**

**A.    Team Group's ads and online listings promise that its memory will run at the advertised speed out of the box, and that it will do so reliably.  These representations are not qualified.**

13.     Team Group markets and sells high-end computer components and accessories.  Team Group markets its products to computer gamers who want to improve the performance of their games.

14.     One of Team Group's flagship products is its high-speed computer memory (RAM) DDR-4 and DDR-5 product lines, including its Xtreem, Vulcan, Delta, Elite, Xcalibur, Vulcan, Dark, T1, Expert, or Elite product lines (collectively, "Team Group High-Speed Memory").  These memory products can be plugged into the memory slots of a desktop computer.

15.     Team Group's ads and online listings highlight the specific speeds of its High-Speed Memory.  Memory speed means how fast the memory transfers data, and it is measured in units of Megahertz (MHz).  The more MHz, the purportedly faster the memory and the higher the performance.[1]

---

[1] Sometimes speeds are referred to as MT/s instead of MHz.  When referring to speeds of Defendant's High-Speed Memory products, "MHz" and "MT/s" have the same meaning and are interchangeable.

Class Action Complaint                    2                    Case No. 2:24-cv-03681

16.    Team Group's packaging and advertisements state that its memory runs at specific, high speeds.  For example, here is an Amazon listing for T-Force Delta RGB "3200 MHz" DDR-4 memory product, from the "TEAMGROUP Store" on Amazon: [2]



17.    The "TEAMGROUP Store" Amazon listing for each model of Team Group's High-Speed Memory is substantially similar to this one and includes substantially the same representations about the speed of the memory. Like the representative product page shown above, each product page for each model identifies the MHz speed of the memory in the product name and in the product description.

18.    As a second example, here is a Newegg listing for T-Force Vulcan Z DDR-4 "3200 MHz" memory:[3]

---

[2] https://www.amazon.com/TEAMGROUP-T-Force-3200MHz-PC4-25600-TF3D432G3200HC16FDC01/dp/B08PV1QQJX
[3] https://www.newegg.com/team-32gb-288-pin-ddr4-sdram/p/N82E16820331618?Item=N82E16820331618

19.    The Newegg listing for each model of Team Group High-Speed Memory is substantially similar to this one and includes substantially the same representations about the speed of the memory. Like the representative product page shown above, each product page for each model identifies the MHz speed of the memory in the product name and in the product description.

20.    The statements about the MHz speed of Team Group's memory on the Amazon and Newegg websites, and the websites of other authorized retailers, are attributable to Team Group, and are made with Team Group's knowledge and permission. To begin, Team Group expressly authorized each reseller to resell its memory, and says so on its website. In addition, the model name of the memory—which, for each model of Team Group High-Speed Memory, identifies the MHz speed of the memory—is set by Team Group. Team Group's authorized resellers use this product name to identify Team Group's products when selling them to consumers, with Team Group's knowledge and permission. Indeed, Team Group intends for its product name to be used by its authorized resellers to identify its products. So the representations about the memory speed in the product name are statements made by Team Group, and its

authorized resellers make those representations with Team Group's knowledge and permission.

21.    Moreover, Team Group is aware that its authorized resellers sell its High-Speed Memory, know what the listings for that High-Speed Memory say, and know that the listings contain the statements identified above concerning the speed of Team Group's memory. Indeed, Team Group expressly authorizes those resellers to resell its products and links to the website of those resellers containing the representations at issue from its own website, and expressly identifies them as authorized resellers and announces this fact to consumers. Thus, Team Group knows and specifically approves of (and manifests its approval for) those listings and specifically the use of the statements identified above concerning the speed of Team Group's memory. Plus, with that knowledge, Team Group voluntarily kept the benefits of those listings and the sales made by those listings, including by accepting money for the sales it made through those approved retailers including specifically Amazon and Newegg.

22.    What's more, Team Group affirmatively set up the "Team Group Store" on Amazon and provided the images and descriptions of the Team Group products on the Team Group store.  And Team Group provided the images and descriptions used by its other authorized resellers, or knew and approved of the fact that those resellers were using those images and descriptions.

23.    Team Group also pervasively distributes other ads that highlight the speed, compatibility, and reliability of its High-Speed Memory.  For example:



*From Team Group[4]*

---

[4] https://www.teamgroupinc.com/en/product-detail/memory/T-FORCE/delta-rgb-ddr4-black/delta-rgb-ddr4-black-TF3D416G4000HC20CDC01/



*From TeamGroup[5]*



*From the TeamGroup Store on Amazon[6]*

---

[5] https://www.teamgroupinc.com/en/product-detail/memory/T-FORCE/delta-rgb-ddr5-white/delta-rgb-ddr5-white-FF4D596G7000HC34ADC01/

[6] https://www.amazon.com/TEAMGROUP-T-Force-3600MHz-PC4-28800-Channel/dp/B08T24YD3G?ref_=ast_sto_dp&th=1

24.    The examples above are representative of Defendant's advertising.  In sum, Defendant's ads and online listings promise specific high-speeds and reliability and are pervasively disseminated across purchasing channels.  Because these promises are pervasively disseminated, every consumer purchasing Team Group High-Speed Memory encounters substantially similar or identical promises.

25.    To a reasonable consumer that buys Team Group High-Speed Memory, Defendant's ads of Team Group's High-Speed Memory products indicate that the memory will run at the stated speed out of the box, and that it will do so reliably across platforms.

26.    This is the plain meaning of Defendant's ads, which (a) state the speed unequivocally and without qualification and (b) promise reliability.

27.    This is also what consumers reasonably understand memory speeds to indicate, based on typical memory purchases.  Typically, consumers buy memory as part of a complete computer purchase from a PC maker like Dell or HP.  And when the PC arrives, the memory is already running at the stated speed.  In addition, when a consumer buys aftermarket memory (e.g., to add more memory or replace broken memory) it is typical to purchase common, standard speed memory (e.g., memory that runs at the 2133 MHz standard), which runs at the stated speed reliably and out of the box.  For example, a consumer can buy 2133 MHz memory from Dell that runs at this standard speed out of the box.

28.    A reasonable consumer would also expect that, if there were important qualifications about the promised speed, Defendant would make this clear.  For example, if Team Group's High-Speed Memory was only able to operate at the advertised speed after altering the computer's firmware, this is something a reasonable consumer would want to know, and expect Defendant to clearly disclose.  And if there is a substantial risk that the memory will not run at the advertised speed, or will not run stably, this is something a reasonable consumer would also want to know, and expect Defendant to

1  clearly disclose.  But as illustrated above, Defendant's advertisements contain no such

2  qualifications.

3      **B.      Trying to get the advertised speed requires altering the PC firmware, and there is a substantial risk that the memory will not achieve the advertised speed or run stably.**

4

5

6      29.      In reality, Team Group's High Speed Memory does not operate at the

7  advertised speed when plugged into a computer.  Rather, they operate at a lower speed.

8  For example, the default speed for Team Group's DDR-4 memory products (listed with

9  speeds of 3200 MHz, 3600 MHz, etc.) is in fact 2133 MHz.  If a consumer buys these

10  memory sticks, expecting to achieve the advertised speed, and plugs them into his or her

11  computer without doing anything else, the memory only runs at 2133 MHz.

12      30.      Similarly, the default speed for Team Group's DDR-5 memory products

13  (listed with speeds of 5600 MHz, 6400 MHz, etc.) is in fact 4800 MHz.  If a consumer

14  buys these memory sticks, expecting to achieve the advertised speed, and plugs them into

15  his or her computer without doing anything else, the memory only runs at 4800 MHz.

16      31.      Defendant's ads do not alert consumers that the product will operate at a

17  lower speed than advertised out of the box.  Nor is a difference in speed clearly

18  observable when performing most computer functions.  Rather, users must go into their

19  computer settings to find out what RAM speed their computer is running.  The result is

20  that a user can purchase Team Group High-Speed Memory, plug it into a computer, and

21  get the same speed they were getting before, without ever knowing the difference.

22      32.      If a consumer even realizes that their memory is running slow (compared to

23  the advertised speed), they must attempt to "overclock" it to achieve the advertised speed.

24  Overclocking involves pushing computer components beyond their standard operating

25  speeds.

26      33.      As described next, overclocking memory requires altering the PC's firmware.

27  And it carries a substantial risk that the memory will not run at the advertised speed or

28  will not run stably at this speed.  But Defendant never discloses this on the packaging or

in its ads.

### 1.    Attempting to obtain the advertised speeds requires altering PC firmware.

34.    Overclocking memory requires altering the computer's firmware by adjusting its Basic Input/Output System (BIOS) or Unified Extensible Firmware Interface (UEFI) settings.  A computer's BIOS or UEFI is the program that governs the fundamental mechanisms by which the computer turns on and operates.  On many computers, accessing the BIOS or UEFI settings involves restarting the computer and repeatedly pressing a designated keyboard button (which varies by computer brand) during a brief window of time after the computer turns on.

35.    Once the user has accessed the BIOS or UEFI settings, the user must locate the setting for the RAM frequency (its MHz speed) and increase the RAM frequency to the desired speed.

36.    In addition to changing the frequency, overclocking often requires changing multiple memory "timing" settings, which interact with the frequency settings.

37.    Also, because running the RAM at higher speeds requires additional power, overclocking can also require increasing the voltage settings.

38.    On certain Intel computer systems, the BIOS has an "XMP" (Extreme Memory Profile) setting that will set the various memory parameters to predetermined profiles.  While this simplifies configuration, it still requires altering the BIOS, and these settings are only available on certain motherboards.

39.    Altering the computer's firmware in this way poses material risks to the functionality of the computer system, as well as to the memory products themselves.  Some examples include reducing computer system stability, causing crashes, overheating system components, and causing system components to degrade more quickly.

40.    Because of the risks associated with overclocking, overclocking can void warranties on important components of the computer. Intel's website states, "[a]ltering

clock frequency or voltage may void any product warranties and reduce stability, security, performance, and life of the processor and other components." [7]

41.     An Amazon review illustrates the technical morass of attempting to get the advertised speed:

> I had to turn on the XMP profile, bump up the voltage to 1.47 (stock 1.45) and fiddle around with DIGI+ VRM settings to have [TEAMGROUP T-Force XTREEM ARBG] run stable at the rated speed and timings...spent half a day getting things dialed in - I could not get other secondary and tertiary timings tighter as they are not stable and don't want to daily higher voltages.[8]

### 2.     There is a substantial risk that the memory will not run at the indicated speed or will not run stably at this speed.

42.     There is a substantial risk that the user's particular combination of other computer components (like the processor and other motherboard components) simply cannot support overclocking at the advertised speed.  Memory interacts with other components in complex ways and overclocking is sensitive to this.  If the combination of components is not optimal, the memory will not run at the advertised speed or it will run unstably (causing software glitches or system crashes).

43.     Beyond this, there is a substantial risk that a reasonable user will not be able to find the precise combination of frequency, timing, and voltage needed to achieve the advertised speeds.

44.     This is why online forums and reviews are replete with complaints from Team Group users that they cannot achieve the advertised speeds.  Here are some representative complaints:

> [The RAM will] just go down to a supported MHZ if incompatible... but then you won't be able to utilize the RAM speed that you paid for[.][9]

---

[7] https://www.intel.com/content/www/us/en/support/articles/000005494/processors.html

[8] https://www.amazon.com/TEAMGROUP-T-Force-3600MHz-PC4-28800-Channel/dp/B08T24YD3G?ref_=ast_sto_dp&th=1

[9] https://www.reddit.com/r/buildapc/comments/sz0rq2/difference_between_teamgroup_rams/

> I have this TEAMGROUP-UD4-3200 1x8GB RAM…It says it can reach 3200mhz but its only giving choice maximum of 2666mhz in BIOS menu.[10]

> Second problem is that whenever i overclock [TeamGroup 4000Mhz CL16-18] RAM results are worse.[11]

> This … sadly didn't work for me. One stick didn't work at all until I reseated it a third time, and then the system locked up within hours. I was using the 3600 with XMP enabled, I expect it to work at the speed advertised. [12]

45.    Team Group's reviews also have customer complaint and its false advertising. For example:

> [TEAMGROUP T-Create Expert DDR4 RAM] are not 3200 MHz. [I]n fact, they are 2400 MHz. You [c]an get them to run at 3200 MHz by going into your bios and adjusting the XMP setting to overclocked to 3200 MHz… advertising the overclocked XMP speed as the memory speed…is very misleading.[13]

## V.    Defendant's ads are misleading to reasonable consumers.

46.    As detailed above, Defendant's packaging and ads promise specific high speeds and reliability, and omit any warning about the risks and realities of overclocking. And this is not information that a reasonable Team Group customer already knows.  A typical purchaser of Team Group High-Speed Memory is not a computer expert (much less a memory overclocking expert).  Rather, a typical purchaser of Team Group High-Speed Memory is a regular consumer simply looking to improve the performance of their computer games or media software.

47.    Team Group's false advertising is demonstrated by this online review:

> [TEAMGROUP T-Create Expert DDR4 RAM] are not 3200 MHz. [I]n fact, they are 2400 MHz. You [c]an get them to run at 3200 MHz by going into your bios and

---

[10] https://www.reddit.com/r/buildapc/comments/16nznvf/help_me_overclock_my_components_to_their_max/

[11] https://www.reddit.com/r/overclocking/comments/1540jjz/teamgroup_4000mhz_cl1618_better_results_than/

[12] https://www.amazon.com/TEAMGROUP-T-Force-3600MHz-PC4-28800-Channel/dp/B08T24YD3G?ref_=ast_sto_dp&th=1

[13] https://www.amazon.com/TEAMGROUP-T-Create-overclocking-3200MHz-Desktop/dp/B09GXHMVTR/ref=m_crc_dp_lf_d_t1_d_sccl_5_2?th=1

adjusting the XMP setting to overclocked to 3200 MHz… advertising the
overclocked XMP speed as the memory speed…is very misleading.[14]

48.    If Defendant wanted to be truthful in its packaging and advertising, it would
have to make clear that the speeds it is listing are the *maximum* possible speeds that the
memory can run.  Defendant would also have to clearly and prominently warn consumers
that achieving the advertised speed requires altering the PC firmware, and that it may not
be possible to stably achieve the advertised speed.

49.    Defendant's packaging and ads, however, make no such qualifications and
thus made material misstatements and omissions.

50.    In addition, Defendant failed to disclose to consumers that the stated speed
was not the default speed, that they would have to make various complex changes to their
PC firmware to achieve the stated speed, and that even if they made those complex
changes, there is a substantial chance that they will not be able to stably achieved the
advertised speed.

51.    The omissions were material, because a reasonable consumer would attach
importance to the truth or falsity of those omissions in deciding whether to purchase
High-Speed Memory.  Moreover, these omissions are related to the product's central
function: the speed of the memory.  As Defendant's marketing campaign reflects, speed is
a primary factor in determining the price a consumer will pay for memory and in driving
purchase decisions.  Defendant could have and should have clearly revealed this
qualifying information, on both the product packaging and in its ads.  And Defendant
could have, and should have, clearly put these qualifications in close proximity to its
affirmative representations about speed.  While this would drive down the price that
Defendant could charge, it would be truthful.

52.    Defendant knows the truth about overclocking, and knows what the
packaging and ads say (and omit).  Thus, Defendant knew that its statements were false

---

[14] https://www.amazon.com/TEAMGROUP-T-Create-overclocking-3200MHz-
Desktop/dp/B09GXHMVTR/ref=m_crc_dp_lf_d_t1_d_sccl_5_2?th=1

and misleading to reasonable consumers and Defendant intended for consumers to rely on its false and misleading statements when purchasing High-Speed Memory.

**VI.    Plaintiffs were misled and harmed by Defendant's advertisements.**

53.    In May of 2020, Plaintiff Malcolm Griffin purchased 64GB of "3200 MHz" Team Group T-Force Vulcan Z memory, from Amazon.  He paid about $229.00 for the RAM.  Plaintiff saw and relied upon Defendant's claims that the memory would run reliably at 3200 MHz.

54.    Approximately one year after purchase, Plaintiff Griffin learned that the memory was not running at the advertised speed, and that it was necessary to alter his computer's BIOS settings to attempt to achieve the advertised speed. Plaintiff Griffin then attempted to alter his BIOS, but was unable to get the memory to run reliably at the advertised speed of 3200 MHz.

55.    Had Plaintiff Griffin known the truth about the memory, he would not have bought it or would not have paid the same price for it.

56.    Plaintiff Griffin would purchase Team Group High-Speed Memory again if it was actually sold as advertised.  Plaintiff, however, faces an imminent threat of harm because Plaintiff will not be able to rely on Defendant's ads in the future, and thus will not be able to purchase the products even if they were sold as advertised.

57.    In May of 2022, Plaintiff Kariem Ibrahim purchased 32 GB of "3600 MHz" Team Group T-Force Delta RGB memory, from Micro Center.  He paid about $140.00 for the RAM.  Plaintiff saw and relied upon Defendant's claims that the memory would run reliably at 3600 MHz.

58.    After purchasing and installing the memory, Plaintiff Ibrahim discovered that his system was not running at 3600 MHz as he anticipated it would have.  He then learned that it was necessary to alter his computer's firmware to attempt to achieve the advertised speed.  Plaintiff Ibrahim then attempted to alter his computer's firmware to overclock the RAM to the advertised speed of 3600 MHz, but the memory caused issues in his machine, including random screen black-outs, at the advertised speed. Plaintiff

Ibrahim was unable to get his computer to run stably at the advertised 3600 MHz, when using the Team Group T-Force Delta RGB memory DDR4 3600 RAM.

59.    Had Plaintiff Ibrahim known the truth about the memory, he would not have bought it or would not have paid the same price for it.

60.    Plaintiff Ibrahim would purchase Team Group High-Speed Memory again if it was actually sold as advertised.  Plaintiff, however, faces an imminent threat of harm because Plaintiff will not be able to rely on Defendant's ads in the future, and thus will not be able to purchase the products even if they were sold as advertised.

**VII.    Class action allegations.**

*The proposed class and subclasses.*

61.    Plaintiffs bring this case on behalf of the proposed **Nationwide Class** of: All individuals who purchased Team Group High Speed Memory in the United States, within the governing statute of limitations period

62.    For certain claims, Plaintiffs bring those claims on behalf of the **Consumer Protection Subclass** consisting of: all individuals who purchased the Team Group High Speed Memory, while in the identified states, within the governing statute of limitations.

63.    For certain claims, Plaintiff Griffin brings those claims on behalf of the **California Subclass** consisting of:  all individuals who purchased Team Group High Speed Memory, in California, within the governing statute of limitations period.

64.    For certain claims, Plaintiff Ibrahim brings those claims on behalf of the **New York Subclass** consisting of: all individuals who purchased Team Group High Speed Memory, in New York, within the governing statute of limitations period.

65.    It is appropriate to include all such individuals in each class in the same classes.  All such individuals were presented with substantially similar misrepresentations and omissions by Defendant.  All proposed class members allege the same violations of law and seek the same relief.  There are no conflicts of interest among the proposed class members.

66.    The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6)  the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity

67.    The proposed Class contains members so numerous that separate joinder of each member of the class is impractical.  Based on Defendant's sales, there are at least hundreds of thousands of proposed class members.

### Commonality

68.    There are questions of law and fact common to the proposed class. Common questions of law and fact include:

- Whether Defendant's advertisements were unfair, deceptive, false, and/or misleading;
- Whether Defendant breached express warranties;
- Damages needed to compensate Plaintiffs  and the proposed class.

### Typicality

69.    Plaintiffs' claims are typical of the proposed class.  Like the proposed class, Plaintiffs purchased one of Team Group's High-Speed Memory products.  And like the proposed class, Plaintiffs were presented with and relied upon substantially similar advertising by Defendant.  Plaintiffs allege the same violations of law and seek the same relief as the proposed class.

### Adequacy

70.    Plaintiffs will fairly and adequately protect the interests of the proposed

class.  Plaintiffs' interests are aligned with the interests of the proposed class members: Plaintiffs seek damages and other relief for Defendant's alleged wrongs.  Plaintiffs are represented by experienced class action counsel who are prepared to vigorously litigate this case through judgment and appeal.  There are no conflicts of interest between Plaintiff and the class.

*Final injunctive relief is appropriate respecting the class as a whole.*

71.    Defendant has sold memory sticks through deceptive advertising on grounds that apply generally to the class.  Accordingly, final injunctive relief prohibiting Defendant from engaging in such conduct would appropriately apply class-wide.

*Predominance and Superiority*

72.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that the same Team Group ad is found to be deceptive with respect to some proposed class members, but not others.

73.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  Each class member's claims arise out of the same conduct by Defendant.  And a core liability question is common: whether Defendant's advertisements were deceptive.

74.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of hundreds of thousands (or millions) of similar, individual claims in separate lawsuits.

*Ascertainability*

75.    Class membership can be objectively determined based on whether they

bought Team Group High Speed Memory.  And the number and identity of class members can be determined through Defendant's records, the records of its retailers, and appropriate methods of public notice.

**VIII.  Claims.**

### First Cause of Action:

### Violations of State Consumer Protection Acts

### (By Plaintiffs and the Consumer Protection Subclass)

76.    Plaintiffs incorporate by reference each and every factual allegation set forth above.

77.    This count is brought on behalf of Plaintiffs and the Consumer Protection Subclass for violations of the following consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |

| | |
|---|---|
| Illinois | 815 ILCS § 501/1, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |

| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |

86.    Each of these statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sale of goods or services to consumers.  Defendant's misleading ads violate each statute's prohibitions.

87.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs and class members saw, read and reasonably relied on Defendant's misrepresentations and omissions when purchasing High-Speed Memory.

88.    Defendant is aware of the truth about overclocking (as alleged in detail above) and was therefore aware that its ads were misleading to reasonable consumers.

89.    For applicable statutes, Plaintiff Griffin provided written notice and a demand for correction on April 10, 2024, and Plaintiff Ibrahim provided written notice and a demand for correction on April 18, 2024 (together with notice of certain other violations alleged in this Complaint).  Upon the expiration of any governing statutory notice period, Plaintiffs and the class seek all available injunctive or monetary relief.

90.    Defendant had a duty to disclose material, qualifying information because: (1) Defendant affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendant had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Defendant was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

91.   Defendant's misrepresentations and omissions were a substantial factor in Plaintiffs and subclass members' purchase decision.

92.   Plaintiffs and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Team Group High-Speed Memory if they had known the truth about Defendant's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendant's misrepresentations and omissions.

<u>**Second Cause of Action:**</u>

**Violation of California's Unfair Competition Law**

**(by Plaintiff Griffin and the California Subclass)**

78.   Plaintiff Griffin incorporates each and every factual allegation set forth above.

79.   As alleged in Count I, state consumer protection laws are sufficiently similar such that Plaintiff Griffin may bring a claim on behalf of the Consumer Protection Subclass.  In the alternative, Plaintiff Griffin brings this UCL claim on behalf of himself and members of the California Subclass.

80.   Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

81.   Defendant engaged in unlawful conduct by violating the CLRA and FAL, and other applicable law as alleged in this Complaint.

*The Fraudulent Prong*

82.   Defendant's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Defendant had a duty to disclose material, qualifying information because: (1) Defendant affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations;

and (2) Defendant had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase. Defendant was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

83.    As alleged in detail above, Defendant's affirmative representations about the speed and reliability of Team Group High-Speed Memory were both false and misleading.

84.    Defendant's misrepresentations and omissions were likely to deceive, and did deceive, Plaintiff Griffin and reasonable consumers.

### The Unfair Prong

85.    Defendant violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

86.    The harm to Plaintiff Griffin and the class greatly outweighs the public utility of Defendant's conduct. There is no public utility to Defendant's misleading ads. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading ads only injure healthy competition and harm consumers.

*        *        *

87.    For all prongs, Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff Griffin and class members saw, read and reasonably relied on them when purchasing High-Speed Memory. These misrepresentations and omissions were a substantial factor in Plaintiff Griffin and class members' purchase decision.

88.    In addition, class-wide reliance can be inferred because the misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory products.

89.    Plaintiff Griffin and subclass members could not have reasonably avoided this injury because Defendant's advertisements were misleading to reasonable consumers.

90.     Defendant's misrepresentations and omissions were a substantial factor in Plaintiff Griffin's purchase decision and the purchase decision of subclass members.

91.     Plaintiff Griffin and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Team Group High-Speed Memory if they had known the truth about Defendant's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendant's misrepresentations.

### Third Cause of Action:

### Violation of California's False Advertising Law (FAL)
### (by Plaintiff Griffin and the California Subclass)

92.     Plaintiff Griffin incorporates by reference each and every factual allegation set forth above.

93.     Plaintiff Griffin brings this FAL claim on behalf of himself and members of the California Subclass.

94.     As alleged above, Defendant falsely advertised the High-Speed Memory Products by falsely representing that the products run out of the box at the advertised speed, and do so reliably.

95.     Defendant's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Defendant had a duty to disclose material, qualifying information because: (1) Defendant affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendant had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Defendant was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

96.     Defendant's representations and omissions were likely to deceive, and did deceive, Plaintiff Griffin and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were untrue and misleading.

97.     Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff Griffin and subclass members saw, read and reasonably relied on them when purchasing High-Speed Memory.

98.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory Products.

99.     Defendant's misrepresentations and omissions were a substantial factor in Plaintiff Griffin's purchase decision and the purchase decision of subclass members.

100.    Plaintiff Griffin and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Team Group High-Speed Memory if they had known the truth about Defendant's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendant's misrepresentations and omissions.

<u>**Fourth Cause of Action**</u>:

**Violation of California's Consumer Legal Remedies Act**

**(by Plaintiff Griffin and the California Subclass)**

101.    Plaintiff Griffin incorporates each and every factual allegation set forth above.

102.    Plaintiff Griffin brings this cause of action on behalf of himself and members of the California Subclass.

103.    Plaintiff Griffin and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

104.    Plaintiff Griffin and the subclass have engaged in "transactions" with Defendant when buying High Speed Memory, as that term is defined by California Civil Code § 1761(e).

105.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

106.    Plaintiff Griffin and the other members of the California Subclass purchased High-Speed Memory for personal, family, or household purposes.

107.    As alleged above, Defendant violated the CLRA by falsely representing that the products run out of the box at the advertised speed, and do so reliably.  This conduct violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

108.    Defendant's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Defendant had a duty to disclose material, qualifying information because: (1) Defendant affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendant had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Defendant was in a superior position to know this information, as the maker and seller of the High-Speed RAM.

109.    Through its representations and omissions, Defendant misrepresented the "characteristics," "uses," "benefits," or "quantities" of the High-Speed Memory products, in violation of Cal. Civ. Code § 1770(a)(5).

110.    Through its representations and omissions, Defendant misrepresented that the High-Speed Memory was "of a particular standard, quality, or grade" in violation of Cal. Civ. Code § 1770(a)(7).

111.    Defendant advertised the High-Speed Memory sticks "with intent not to sell them as advertised," in violation of Cal. Civ. Code § 1770(a)(9).

112.    Defendant's representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

113.    Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff Griffin and class members saw, read and reasonably relied on them when purchasing High-Speed Memory.

114.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory products.

115.    Defendant's misrepresentations and omissions were a substantial factor in Plaintiff Griffin's purchase decision and the purchase decision of subclass members.

116.    Plaintiff Griffin and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Team Group High-Speed Memory if they had known the truth about  Defendant's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendant's misrepresentations and omissions.

117.    Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Griffin, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

118.    CLRA § 1782 NOTICE.  On April 10, 2024, Plaintiff Griffin sent a CLRA notice and demand letter to Defendant Team Group, Inc.'s headquarters at 3F., NO. 166, Jian Yi Rd., Zhonghe Dist., New Taipei City 23511, Taiwan, R.O.C. via certified mail (return receipt requested). Defendant Team Group, Inc. does not have a California headquarters or registered agent. If Defendant does not fully correct the problem for

1   Plaintiff and for each member of the California Subclass within 30 days of receipt,

2   Plaintiff Griffin and the subclass will seek all monetary relief allowed under the CLRA.

3       119.    A CLRA venue declaration is attached.

4                       **Fifth Cause of Action:**

5              **Violation of New York Gen. Bus. Law § 349**

6              **(by Plaintiff Ibrahim and the New York Subclass)**

7       120.    Plaintiff Ibrahim incorporates each and every factual allegation set forth

8   above.

9       121.    Plaintiff Ibrahim brings this cause of action individually and for the New

10  York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349

11  (among other relief).

12      122.    Plaintiff Ibrahim and the subclass purchased Team Group High-Speed

13  Memory in New York.

14      123.    Defendant's labelling is consumer-oriented and its misleading labelling has a

15  broad impact on consumers at large, i.e., the multitude of New Yorkers that purchase

16  Team Group High-Speed Memory.

17      124.    As alleged in detail above, Defendant's misrepresentations and omissions are

18  likely to mislead reasonable consumers acting reasonably under the circumstances.  These

19  misrepresentations and omissions were material (and important) to consumers and drove

20  their choice to purchase Team Group High Speed Memory.

21      125.    As alleged above, Defendant's misrepresentations and omissions were willful

22  and knowing.

23      126.    Plaintiff Ibrahim and subclass members were injured as a direct and

24  proximate result of Defendant's conduct because they did not get what they paid for

25  (memory products that will run at the stated speed out of the box, and that will do so

26  reliably across platforms) and they overpaid for the products because the products are

27  sold at a price premium due to Defendant's misrepresentations.

28

127.    Plaintiff and the subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y. Gen. Bus. Law § 349 (h).

**<u>Sixth Cause of Action</u>:**

**Violation of New York Gen. Bus. Law § 350**

**(by Plaintiff Ibrahim and the New York Subclass)**

128.    Plaintiff Ibrahim incorporates each and every factual allegation set forth above.

129.    Plaintiff Ibrahim brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

130.    Plaintiff Ibrahim and the subclass purchased Team Group High-Speed Memory in New York.

131.    Defendant's labelling is consumer-oriented and its misleading labelling has a broad impact on consumers at large, i.e., the multitude of New Yorkers that purchase Team Group High-Speed Memory.

132.    As alleged in detail above, Defendant's misrepresentations and omissions are likely to mislead reasonable consumers acting reasonably under the circumstances.  These misrepresentations and omissions were material (and important) to consumers and drove their choice to purchase Team Group High Speed Memory.

133.    As alleged above, Defendant's misrepresentations and omissions were willful and knowing.

134.    Plaintiff Ibrahim and subclass members were injured as a direct and proximate result of Defendant's conduct because they did not get what they paid for (memory products whose memory will run at the stated speed out of the box, and that will do so reliably across platforms) and they overpaid for the products because the products are sold at a price premium due to Defendant's misrepresentations.

135.    Plaintiff Ibrahim, and the subclass seek statutory damages of $500, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y. Gen. Bus. Law § 350-e (3).

**Seventh Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiffs and the Nationwide Class)**

136.    Plaintiffs incorporate each and every factual allegation set forth above.

137.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.

138.    As alleged above, when selling High-Speed Memory, Defendant issued written warranties by representing that the products would run out of the box at the advertised speeds, and would do so reliably.  This was an affirmation of fact about the products and a promise relating to the goods.

139.    This warranty was part of the basis of the bargain and Plaintiffs and class members relied on this warranty.

140.    The High-Speed Memory Products breached this warranty because attempting to achieve the advertised speed requires altering computer firmware, and a substantial portion of the products do not run at the advertised speed or do not do so reliably.

141.    Defendant's breach was a substantial factor and a proximate cause in causing damages and losses to Plaintiff and the class.

142.    Plaintiff Griffin provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on April 10, 2024.

143.    Plaintiff Ibrahim provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on April 18, 2024.

144.    Plaintiffs and class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Team Group High-Speed Memory if they had known that Defendant would breach its warranty; and (b) they

overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendant's false warranty.

**Eighth Cause of Action:**

**Negligent Misrepresentation**

**(by Plaintiffs and the Nationwide Subclass)**

145.    Plaintiffs incorporate each and every factual allegation set forth above.

146.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.

147.    Through its ads, Defendant represented to Plaintiffs and class members that the High-Speed Memory would run at the specified speed out of the box, and do so reliably.  Defendant's ads omitted any warning that the High-Speed Memory may not run at the advertised speed or may not do so reliably.

148.    Defendant's representations were false, because trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that the memory will not achieve the advertised speed or will not run stably.

149.    At the time Defendant made the above misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing its representations were true when made.

150.    Defendant intended that Plaintiffs and class members rely on these representations and omissions, and Plaintiffs and class members read and reasonably relied on them when purchasing High-Speed Memory.

151.    Defendant's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Defendant had a duty to disclose material, qualifying information because: (1) Defendant affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Defendant had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it

involved complex technical information that was not readily apparent at the time of purchase.  Defendant was in a superior position to know this information, as the maker and seller of the High-Speed RAM.

152.    Defendant's misrepresentations and omissions were a substantial factor in Plaintiffs' purchase decision and the purchase decision of class members.

153.    Plaintiffs and class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Team Group High-Speed Memory if they had known the truth about Defendant's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Defendant's  misrepresentations and omissions.

## IX.    Relief.

154.    Plaintiffs seek the following relief for themselves and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed class;
- Damages, including statutory damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## X.    Demand for Jury Trial.

155.    Plaintiffs demand the right to a jury trial on all claims so triable.

1   Dated: May 3, 2024                    Respectfully submitted,

2                                    By: */s/ Richard Lyon*

3                                      Richard Lyon (Cal. Bar No. 229288)

4                                      rick@dovel.com
                                       DOVEL & LUNER, LLP

5                                      201 Santa Monica Blvd., Suite 600
                                       Santa Monica, California 90401

6                                      Telephone: (310) 656-7066

7                                      Facsimile: (310) 656-7069

8                                      Kevin Kneupper, Esq. (CA SBN 325413)

9                                      kevin@kneuppercovey.com

10                                   A. Cyclone Covey, Esq. (CA SBN 335957)
                                  cyclone@kneuppercovey.com

11                                   KNEUPPER & COVEY, PC

12                                   17011 Beach Blvd., Ste. 900
                                  Huntington Beach, CA 92647-5998

13                                   Telephone: (512) 420-8407

14

15                                      *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28